IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR MANUEL BOSSIO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | )CIVIL ACTION NO. 3:16-CV-839-ECM-WC | |
| | ) | |
| CPL. DORA BISHOP (HUNTER), et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Hector Manuel Bossio, Jr. ("Bossio"), a pre-trial detainee confined in the Russell County Jail, asserting that his arrest on January 7, 2016 in Russell County was unlawful because the police officers had no probable cause to detain, search and arrest him.  Bossio names Russell County police officers Corporal Dora Bishop and Sergeant Marc Cutt and Police Chief Ray Smith, as defendants (collectively "the defendants").  He seeks monetary and injunctive relief for the alleged violations of his constitutional rights.

The defendants filed an answer, special report, and supporting evidentiary materials addressing Bossio's claims for relief.  In these documents, the defendants deny violating Bossio's constitutional rights.

After the defendants filed their initial special report, the court issued an order directing Bossio to file a response to the arguments set forth by the defendants in the report and advising him that his response should be supported by affidavits or statements

made under penalty of perjury and other appropriate evidentiary materials.  (Doc. 46 at pp. 1-2).  The order specifically advised the parties that "at some time in the future the court will treat the defendants' report . . . as a dispositive motion[.]" *Id.*  In addition, the order specifically cautioned the parties that "<u>unless within ten (10) days from the date of this order a party files a pleading which presents sufficient legal cause why such action should not be undertaken</u> . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." (Doc. 46 at p. 2). (emphasis in original).  Bossio filed a response to this Order on February 21, 2017.  (Doc. 47).

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P.

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be

admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but

that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Bossio has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant. *See Matsushita*, 475 U.S. at 587.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Bossio has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary in favor of the defendants.

### III.  RELEVANT FACTS[1]

On January 7, 2016, Defendant Officer Sgt. Cutt responded to a dispatch report of a suspicious vehicle parked in the driveway of 1804 Timberland Drive in Phenix City, Alabama. A 911-caller, identifying herself as residing at this address, reported that there

---

[1] The facts are construed in the light most favorable to the plaintiff, as this court must do. *See Beard*, 548 U.S. at 525.

was a suspicious vehicle parked in her driveway and that a man appeared to be asleep in the car.  The caller explained that she was not at home, but a neighbor had contacted her about the vehicle in her driveway and she was concerned.  (Doc. 34-1 at pp. 2-3).  The defendants filed with the Court an audio file which contained a recording of the 911 call.  (Docs. 34-6, 35-2).  The Court has listened to the audio recording of the 911 call and independently confirms that the 911 call is correctly summarized above.[2]

After receiving the dispatch call, Defendant Officer Sgt. Cutt arrived at 1804 Timberland Drive and identified a black Nissan Altima in the driveway.  Sgt. Cutt asked the Phenix City Police Department dispatch to run the license plate of the vehicle.  Dispatch advised Sgt. Cutt that it had been reported stolen through the Columbus Police Department by Headquarters Nissan of Columbus, Georgia.  (Doc. 34-1 at p. 3).  The defendants filed with the Court an audio file which contains recordings of the dispatch communications with the defendant officers.  (Doc. 34-6; Doc. 35-2).  The Court has listened to the audio recording of dispatch and the officers' communications and independently confirms that these communications are correctly summarized herein.

Approximately one minute later, Defendant Officer Cpl. Bishop arrived at the residence.  She and Sgt. Cutt approached the vehicle and attempted to wake the plaintiff.  While the plaintiff was placing his hands on the steering wheel as instructed, Cpl. Bishop and Sgt. Cutt noticed a clear plastic bag containing some type of powdered substance lying in the plaintiff's lap.  This substance was later identified as methamphetamine.  (Doc. 34-1 at p. 4; Doc. 34-2 at p. 2).

---

[2]  Pursuant to Orders of this Court, the plaintiff was provided the opportunity to listen to the audio file.  (Docs. 45, 49, 53).

Sgt. Cutt instructed Cpl. Bishop to place hand cuffs on the plaintiff and to recover the baggie from the subject's lap.  (Doc. 34-1 at p. 4).  While placing handcuffs on the plaintiff, Sgt. Cutt observed a pistol under the plaintiff's leg and advised Cpl. Bishop of it.  (Doc. 34-1 at pp. 4-5; Doc. 34-2 at p. 4).  Cpl.  Bishop immediately instructed the plaintiff to get on the ground.  The plaintiff complied.  Sgt. Cutt recovered a North American Arms .22 caliber Derringer handgun silver in color which was fully loaded and laying on the front seat of the car.  (Doc. 34-1 at p. 5; Doc. 34-2 at p. 4).  While lying on the ground, the plaintiff identified himself as Hector Manuel Bossio and reported that he did not have a permit to carry a pistol.  (Doc. 34-1 at p. 5).

Dispatch also advised Cpl. Bishop that the plaintiff did not have a permit to carry a pistol.  (Doc. 34-2 at p. 4; Doc. 35-2).  Dispatch further advised that the Columbus Police Department had faxed to dispatch a warrant for plaintiff's arrest for the stolen vehicle. (Doc. 34-1 at pp. 5-6; Doc. 34-2 at p. 4; Doc. 35-2).  Later, Cpl. Bishop discovered, when reading the plaintiff's criminal history, that the plaintiff was a convicted felon and forbidden to carry a firearm.  (Doc. 34-2 at p. 4).  A search of Bossio's person was conducted and a large amount of cash was discovered on his person in his wallet.  (Doc. 34-1 at p. 5).  Sgt. Cutt completed a field test on the baggie recovered from the plaintiff's lap which tested positive for methamphetamine.  (Doc. 34-1 at p. 6; Doc. 34-2 at p. 4).

The plaintiff was placed in the back of the patrol vehicle and Cpl. Bishop advised him of his Miranda rights.   Cpl. Bishop stated that Bossio acknowledged his rights and stated he understood what his rights were.  (Doc. 34-2 at p. 4).  Cpl. Bishop noted Bossio made several spontaneous statements.  First, he stated that he was waiting to meet a

person named Jamie at the residence and fell asleep in the rental vehicle.  He also stated that he did not steal the vehicle and did not know Jamie's last name.  Further, Bossio stated that he had the rental agreement which Cpl. Bishop reviewed and discovered that the vehicle was due back on January 4, 2016 – three days before the arrest.  (Doc. 34-2 at pp. 4-5).

Next, Bossio gave two versions of how he came to possess the methamphetamine. First, he stated that he did not notice there was a clear blue plastic bag containing methamphetamine in his lap and that one of the officers could have put it there while he was sleeping.  After Cpl. Bishop told Bossio that his story was ridiculous, Bossio stated that he was digging around in the vehicle and found the bag but did not know what the substance was inside.  Next, Cpl. Bishop asked Bossio about the gun and Bossio stated that the pistol was already inside the vehicle when he rented the vehicle from Headquarters Nissan.   (Doc. 34-2 at p. 5).

During this time, Sgt. Cutt completed an inventory of the stolen/recovered Nissan Altima.  Sgt. Cutt recovered several items from the front side of the vehicle, and glove compartment.  These items included (1) a set of digital scales, (2) Samsung flip cellular phones, (1) purple in color LG cell phone, (1) ZTE cell phone, (1) black in color Verizon cellular phone, (1) black in color LG cellular phone and (1) rental vehicle contract.  Also, Sgt. Cutt recovered (1) gallon sized Ziploc bag, which contained (12) individual packaged clear plastic bags with a crystal-like substance, suspected to be methamphetamine.  This item was located in the right passenger side trunk lining of the

vehicle, just above the wheel well.    This item was secured for evidentiary purposes and turned over to Cpl. Bishop.  (Doc. 34-1 at pp. 6-7; Doc. 35-1 at p. 19).

After Sgt. Cutt located the bag of methamphetamine in the trunk, Cpl.  Bishop asked Bossio about it.  Bossio stated that someone must have planted the drugs in his vehicle.  He also stated that he did not know the drugs were in the trunk.  Bossio further stated that someone took his money and his dope.  Cpl. Bishop transported Bossio to the Phenix City Police Department for further processing.  (Doc. 34-2 at p.6).  Bossio was charged with the crimes of bringing stolen property into the state (13A-8-20), trafficking in methamphetamine (13A-12-213), and certain persons forbidden to possess a pistol. (13A-11-72).   He was processed and booked into the Russell County Jail to await trial on those charges.  (Doc. 34-3 at p. 4).

## IV.  DISCUSSION

Bossio asserts that the defendants violated his constitutional right to be free from an unlawful arrest.  Specifically, he claims that the defendants had no probable cause to arrest him and thus "[m]y rights where {sic} violated when the police searched me.  My rights were violated when I was arrested.  My rights where {sic} violated when the police took possession of my personal belongings." (Doc. 1 at pp 5, 7). "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

> To establish a violation of the Fourth Amendment, [a plaintiff] must demonstrate that [his] arrest was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S. Ct. 1378, 103 L.Ed.2d 628 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.")

(quotation marks omitted).  An arrest is unreasonable if it is not supported by probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S. Ct. 854, 43 L.Ed.2d 54 (1975).

*Walker v. City of Hunstville, Ala.*, 310 F. App'x 335, 337 (11th Cir. 2009).  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends upon the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  It is well-settled that "probable cause is a flexible, common-sense standard. . . .  [I]t does not demand any showing that [the officer's belief an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Probable cause to arrest is present when the arrest is "objectively reasonable based on the totality of the circumstances. . . .  This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. . . .  Although probable cause requires more than suspicion, it does not require convincing proof . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation

marks and citations omitted); *Brown*, 608 F.3d at 734  ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."); *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.").  "Whether probable exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Pringle*, 540 U.S. at 371).

"To determine whether an officer had probable cause to arrest an individual, [federal courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  In making this determination, a court must examine the elements of the charge(s) on which the plaintiff was arrested as the question of "[w]hether a particular set of facts gives rise to probable cause . . . to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby*, 394 F.3d at 1333.

It is undisputed that at the time of the arrest challenged herein the police officers had learned from dispatch that the black 2015 Nissan Altima 4 d tag #PKN4877 GA/16 VIN 1N4AL3AP35C95514, which was registered to Headquarters Nissan of Columbus,

Georgia, had been reported stolen.  (Doc. 34-2 at p. 3).  It is also undisputed that while the officers were knocking on the driver side window of the car, Cpl. Bishop noticed a blue clear plastic bag containing a colored powder substance laying on the driver's lap.  (Doc. 34-2 at p. 3).  Later Sgt. Cutt conducted a field test on the substance using a NARK II drug test kit and the substance tested positive for methamphetamine.  (Doc. 34-2 at p. 4 and Doc. 34-1 at p. 6).

It is also undisputed that while Cpl. Bishop was handcuffing Bossio, Sgt. Cutt observed a handgun under his legs.  After Bossio was secured in cuffs, Sgt. Cutt recovered a silver North American Arms, .22 caliber Derringer handgun which was laying in the seat where Bossio was sitting.  (Doc. 34-1 at pp. 4-5).  Finally, when searching the trunk of the Nissan Altima, Sgt. Cutt and Cpl. Bishop recovered, from under the lining of the right passenger side of the trunk, a gallon size bag containing 12 clear plastic bags of a crystal-like substance which they suspected was methamphetamine.  (Doc. 34-1 at p. 7; Doc. 34-2 at pp. 5-6).  The search of the vehicle also produced the following (1) a set of digital scales, (2) Samsung flip cellular phones, (1) purple in color LG cell phone, (1) ZTE cell phone, (1) black in color Verizon cellular phone, (1) black in color LG cellular phones, and (1) rental vehicle contract.   (Doc. 34-2 at p. 6; Doc. 35-1 at p. 19).

Based on all this information, Officer Bishop arrested Bossio for bringing stolen property into the state pursuant to Ala. Code § 13A-8-20.  (Doc. 34-2 at p. 4).  Section 13A-8-20 directs that "[a]ny person who fraudulently brings into this state any personal property which he knew was stolen elsewhere shall, on conviction, be punished as if he

had stolen it in this state."   At the time of the challenged arrest, the defendant officers knew that the car in which Bossio was seated had been reported stolen through the Columbus Police Department by Headquarters Nissan of Columbus, GA.  (Doc. 34-1 at p. 3).  Further, the defendant officers were advised by Phenix City dispatch that Bossio had outstanding warrants for his arrest through the Columbus Police Department.  (Doc. 34-1 at pp. 5-6).  Upon questioning, Bossio stated to Cpl. Bishop that he did not steal the vehicle.  Thereafter, Cpl. Bishop reviewed the rental agreement for the car, which Bossio had in his possession, and discovered that the vehicle was due to be returned on January 4, 2016 – three days prior to the arrest.  (Doc. 34-2 at p. 5).  Accordingly, the Court concludes probable cause existed to arrest Bossio for bringing stolen property into the state pursuant to Ala. Code § 13A-8-20.

Further, after reading the criminal history on Bossio and learning that he was a convicted felon and was forbidden to possess a firearm, Officer Bishop charged Bossio under Ala. Code § 13A-11-72(a) for illegal possession of a firearm.  (Doc. 34-2 at p. 4). In addition, the audio evidence provided to the Court demonstrates that once Hector Bossio was identified by the Defendant Officers to dispatch and a criminal history was run, dispatch reported Bossio's history showed convictions for past domestic violence. (Docs. 34-6, Exhibit F -- Phenix City Police Department's complete audio file from January 7, 2016 relating to the plaintiff; Doc. 35-2).  Section 13A-11-72(a) states as follows:

> "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence, misdemeanor offense of domestic violence, violent offense as listed in Section 12-25-32(15), or anyone who is subject to a valid protection order for domestic abuse, or anyone of unsound mind

shall own a firearm or have one in his or her possession or under his or her control."

"[O]wnership of a pistol is not a requirement for a violation of the statute; rather, constructive possession of a pistol and a prior conviction for a crime of violence will support a conviction [for being a felon in possession of a pistol under]." *Burton v. State*, 728 So.2d 1142, 1148 (Ala. Cr. App. 1997); *Dickerson v. State*, 517 So. 2d 625, 627 (Ala. Cr. App. 1986), *rev'd on other grounds*, 517 So. 2d 628 (Ala. 1987) ("[O]wnership of a pistol is not a requirement to the violation of [Ala. Code  § 13A-11-72(a)]; rather, constructive possession of a pistol and a prior conviction for a crime of violence will support a conviction."); *see also United States v. Howell*, 425 F.3d 971, 976-77 (11th Cir. 2005) (holding that constructive possession of firearm by a convicted felon is prohibited by federal law).  Thus, an individual's lack of ownership of a pistol is irrelevant to whether probable cause existed to arrest him for a violation of Ala. Code § 13A-11-72(a).

Officer Bishop testified by affidavit that after reading the criminal history on Bossio and learning that he was a convicted felon and was forbidden to possess a firearm, she charged Bossio under Ala. Code § 13A-11-72(a) for illegal possession of a firearm. (Doc. 34-2 at p. 4).  This was confirmed by audio records of reports from Phenix City dispatch, which this Court independently reviewed.  (Doc. 34-6, Exhibit F; Doc. 35-2). In addition, the facts and circumstances known to the Defendant Officers at the time of Bossio's arrest reasonably suggested that Bossio was in constructive possession of a firearm.  Consequently, probable cause existed to arrest Bossio for being a felon in possession of a pistol.

Finally, after noting that the large bag of methamphetamine recovered from the trunk of the Nissan Altima weighed approximately 341 grams total and included (11) bags each weighing 28 grams and one bag weighing 33 grams, Cpl. Bishop, while at the police station, charged Bossio with trafficking in methamphetamine under Ala. Code § 13A-12-231.  (Doc. 34-2 at p. 6).   Ala. Code § 13A-12-231 (7) states as follows:

> (7) "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of 5-methoxy-3, 4-methylenedioxy amphetamine, or of any mixture containing 5-methoxy-3, 4-methylenedioxy amphetamine is guilty of a felony, which felony shall be known as "trafficking in illegal drugs" if the quantity involved:
> a.  Is 28 grams or more, but less than 500 grams, the person shall be sentenced to a mandatory term of imprisonment of three calendar years and to pay a fine of fifty thousand dollars ($50,000).

Based on the amount of methamphetamine which was recovered by police during the search of the vehicle which was rented in Bossio's name and where he was sitting when police answered the 911 call, the Court concludes that probable cause existed to arrest Bossio for trafficking in methamphetamine.    Thus, the Court concludes that Bossio's claim of false arrest fails.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **December 23, 2019** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 9th day of December, 2019.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE